Mr. Volkil, you have 10 minutes, I don't get the timer on my iPad, so I'm going to do this. I reserve three, so I have seven, Your Honor. That's right, you get 10 total, and you've reserved three, so you get seven out of the gate, but let me just set my clock, okay? All right, the floor is yours. Thank you. Good morning, Your Honors. Randy Volkil for the appellant, Kernis Francis. There's no question that when this case was remanded, there was one live count, and I think we all agree that it's an open question in the circuit whether the remand of one count resets the statute of limitations. Clearly, if the state had said, we're not going to retry you, that would have started the statute running, but there's nothing in the record that suggests that that happened, and I say that the state's silence is kind of open-ended. Well, Mr. Volkil, let me ask you about that. I think you're right, of course, subject to what we hear from the other side, that there's nothing in the record on that subject below, but in its brief, the state represents at page 7, note 2 of its principal brief, that it has a transcript of a proceeding in 1998 reflecting that the state indicated then its intention not to proceed with the vacated count. The petitioner was then resentenced even, and your client apparently represented in an earlier proposed amended complaint, I don't know whether that counts as part of the record or not part of the record, that he was in fact resentenced and had a new judgment entered in December 1998. So apart from what's in the record, there's a question of what happened in reality, and there is potentially newly discovered evidence of that. Why shouldn't we, I mean, first of all, have you seen this transcript? Did they show you a copy of this transcript that they're referring to? There are competing off-the-record ideas about what happened. I mean, petitioner said that in, I think it was 2018, he received a new minimus, would have restarted the calendar. Right, but that's not even in the record. Right, none of these things are in the record. But why shouldn't we, I mean, the judge sort of short-circuits this by jumping to a legal theory that you have some pretty solid issues with. But maybe the judge is to be faulted not so much for legal theory, but for not clarifying what the factual record really would reflect. Why shouldn't we just send this back and maybe even on a Jacobson remand, but certainly on some kind of remand and let both parties document what they think really occurred, put in that minimus, try to find out what the heck it is and what it represents under Connecticut law. Consult the transcripts that the state now says it has. And maybe we never have to decide this open question, at least in this case. Why don't we, why shouldn't we do that? Well, that's certainly one possibility. On the other hand, and we have a question that I think can be decided. And I guess if the court doesn't mind, I'll go on arguing the question to remand for the. I mean, I think that that's a reasonable thing for the court to do. But I think can I just add before we do that? I just I mean, does this document that your client refers to? I mean, does that exist? Do you have it? I do not have it. Anybody had to look up what it is. I don't I never heard of it. But but but nobody at the district court level said, oh, no, that doesn't exist. You know, it's an uncontroverted allegation on the record. So I guess it's presumptively exists. But, you know, but the significance of it is another sort of confusing thing. As I understand it, Connecticut law. And this is just from our independent research in my chambers. The minimus is not necessary to make a judgment final. And something clearly went wrong here in the sense that if there was a resentencing, then perhaps there should have been a new minimus submitted. But maybe there wasn't. And maybe it took years for somebody to notice that. Or alternatively, maybe it took years for somebody to know that there needed to be some nolly or equivalent state procedure to dismiss the charge on which the remand had occurred. And maybe it took 20 years for that to be discovered. But either way, somebody screwed up. Right. That's what seems to have happened. And I think the district court, when it says, well, when the state elected not to retry him, then there was nothing left to do. It's not when the state elected. It's when the state told people that they weren't going to retry him, that that would start the thing. And until the state said something, the count was open. And I think if the count that was open had been the big one, the state wouldn't want us to say, well, look, it's been 15 minutes. They're probably not going to do anything. Let's just let's just consider it dismissed. It's only because it's a minor one that the state's fine with with saying, oh, well, you know, we didn't say anything. But at some point you have to assume we didn't want to go forward. The fact is, it doesn't appear that anything happened, at least from our record. As a matter of general practice, what can you speak to? Like what should have happened? Like was this just to whether it was a clerical error or you know, how does the decision not to reprosecute become known to the defendant and to the court? I have to say that I'm not admitted in Connecticut. I'm admitted in the circuit and I'm a New York lawyer. But I think in general, if the case is remanded and there's a live count. Something has to be done to make it go away. Otherwise. And again, I think if it were the big count that had been remanded. The state would be very unhappy if they didn't quite get around to it for a month. And then the court said, you know what? We haven't heard from you. We're just dismissing the 50 year count. And the sentence is now down to five years. The state would want to be heard from. They would want a chance to say, we don't want to proceed. We're dismissing this count or we do want to proceed. Let's have a new trial on this count. And they don't appear to have done either thing. Everybody looks frozen to me. Are you hearing me? Yes. OK. Now you're moving. OK. I just had you so enthralled you weren't. Exactly. Exactly. It wasn't the camera. It was we who were frozen. The clock stopped at 142 also. Yes. But but I think really, if if there has to be something done and I don't know what it would be on the Connecticut law. But I think the state would have to say we don't want to proceed at some point. And obviously, after 20 years, I think it's safe to assume that they didn't want to proceed. But but what is that point? When does it happen? And and I think that's why we need the state to say something. Because, again, if if they just. Well, I mean, well. I'm sorry. Was there a question? Can you hear me? Yes. Now I can. Yeah, I was going to ask, I mean, you know, it was a five year sentence. If it's a five year sentence, doesn't when you get past the five year mark sort of make it obvious that this is over? Well, once you got past your mark, there were other proceedings in place that would toll the statute. So so I think that five years is a reasonable thing. But at that point, the proceeding was alive and he's within the statute. I'm not not here. I think we may be losing Judge Sullivan again, or at least we're losing any other questions from all. Now, can you hear me? Yes, I can. No, no, no question. No question. Can you hear me? I can. All right. All right. So, Mr. Volkow, we've got three minutes of real. So we'll return to you after we hear from Mr. Ross. Can you hear me? Yes. Judge Sullivan, you may. I don't know what you can hear. I don't know what you can hear of yourself, Judge Sullivan. The point, the problem that I'm having is that you sometimes get stretched out as if you were a 45 record being replayed at 33 RPMs. For those of us who are old enough to know what that means. And now we're not hearing you at all. Is it better now? For that sentence, it was. I'm going to dial back in. This is ridiculous. OK. All right. Give me one second. Let's before we start. Let me try to dial back in on a separate line. All right. OK, I've got back. I've got back to my desk. Can you hear me now? Yes. Yes. All right. Hope we can get through these next 13 minutes. All right. You may proceed, Mr. Ross. Good morning, Your Honors. I'm James Ross, Assistant State's Attorney for the Appellee Commissioner of Correction. As far as the record goes, I'm not here to say that the record is crystal clear. It may not be. But I think a remand is not an order. And I essentially relied on something that was part of the documents that were filed by the respondent state document 18-9 Appendix G. That's the Sentence Review Division's decision. And I quoted it from at least partially, but perhaps it'd be helpful to just read this again. The third count, per-en, altering an identification mark on a pistol, per-en, was reversed on appeal. However, the total effective sentence remains at 60 years for the remaining two counts. The Sentence Review Division then went on to discuss why it should or shouldn't alter the sentence and decided that there was no problem with it. It was not disproportionate. And so it left the sentence at 60 years. Right, but Mr. Ross, that doesn't say anything about whether that third count was dismissed or still existed. That says the sentence is going to be the same no matter what, because it was a concurrent sentence. It's been reversed and remanded. But who knows whether the state will retry it or not retry it. Either way, it's not going to affect the effective sentence. So we're going to review whether the sentence that exists was fair or not and concludes that it was. So I don't know if that answers our question. Well, I'm arguing that it should because I think it's clear that the Sentence Review Division wouldn't take any action at all if the state really wanted to leave this count open. If it hadn't, in fact, said we either will not leave this or we will dismiss this count. It would be a waste of judicial resources for the review division to simply act on two counts and really not know what the third count is because there might be a trial. Yes, it's not explicit in the record. The record is is less than it could be. But I think that's not explicit if it's not explicit in the record. I mean, how does that cut? Does that cut in favor of the petitioner who is entitled to a habeas, right? And the clock starts when he's got a final judgment. And if it's not clear that he got a final judgment, then he gets the benefit of the doubt. Well, correct. I guess a couple points I'd like to make. The petitioner asserted that there was a minimus dated 2018 that essentially finalized his lack of a trial on that third count. That was never found as a matter of fact to be a fact by the district court at all. It was controverted. I think the budget council said this was uncontroverted. It was, the state did controvert this assertion and there was no minimus ever filed. So I think this court can affirm the district court because there is a reasonable, at least a reasonable inference from the record, that no set of three judges on the sentence review division would go ahead and issue a four page opinion without knowing that this last count was still viable. Mr. Rawls, I'm getting a little concerned here because you represented in your opposing brief that in the actual real world, putting aside what's in or not in the record, in the actual real world, the fact is that Mr. Francis was resentenced in December of 1998, that there was a representation by the state that it was missing the third count and there was a final judgment back in 1998. Now, if that is so in the real world, I'm not sure why you would have any concern about our remanding this case to the district court. That would resolve this entire matter. It would make absolutely clear what happened and you would win the case, I take it, because it would then be more than a year before the post conviction proceedings took place. So my expectation would be that if that's really what happened in the real world and you've got a transcript that proves that that's really what happened in the real world, you would be perfectly happy if we sent this back to the district court to sort this out. But now it's sounding like you're not that happy to have that happen and that worries me a little bit. I'm not saying we was genuinely object to that and I'm not saying that's unreasonable. It does sound like you're saying that this transcript doesn't really resolve the issue. Oh, I actually think it does, but I need to represent to the court that it's not a part of the record. I can't rely on this and I guess this court can't either. So I just wanted to be forthcoming to the court on information and belief. We believe this happened back in 1998, but it's it is not part of the record. OK, but it could be clarified further on remand. Yes. OK, I mean, you're entitled to argue that we should affirm this no matter what, based on the sentence review or based on whatever other inferences you think can be drawn from this record. I'm not criticizing you for doing that. I just want to make clear that whether you do or don't have an objection, if we decided against you on those arguments that a reasonable course of action, or even if we decide that we don't want to have to sort through drawing inferences or deciding difficult legal questions, that maybe we should know what really happened before we go any further with the case. You would not have an objection to our doing that. That's right. That's a reasonable course of action. I'm not. I don't object. I would ask the court to affirm, but I understand if the court would not. OK. I'm not certain if I have much more. I know the court did make a finding that this man was not, in fact, retried ever. It referred to other parts of the record, but it never gave a date as to when that lack of retrial, when that became final, essentially. And of course, it never found as a factual matter that this alleged minimus of 2018, in fact, existed. So I think there's some holes in the record on the petitioner's side as well. I'm not sure that I have much more to say that I haven't said in the brief, Your Honors. I think this is a reasonable inference that the Sentence Review Division wouldn't go ahead and issue a decision almost two years after it was petitioned. This man had to file a request for a sentence review right after his conviction, before he knew it was going to be reversed. Much later, almost two years later, the Supreme Court reversed this one count, and not long thereafter, the Sentence Review Division said this is not disproportionate to 60 years. I think it's reasonable for this court to infer that that division would not have taken those actions if it thought there was an outstanding count still around that he could get a different time on. But otherwise, I'll rely on the brief unless the court has questions. Thank you, Mr. Ross. And now we'll hear from Mr. Volkel for the last three minutes of this morning, if we can get through it. So, Mr. Volkel. Thank you, Your Honor. I would say first that what the Sentence Review Commission did or did not do, I don't know that they even had the authority to decide whether to retry petitioner. And I think the issue is that whether or not there was a new minimus 20 years later, nobody during the relevant time period stated in any form, and I don't think even with this information about the Sentencing Commission, that still nobody said we're not retrying you. So the count remained open. I don't think the Sentencing Commission had the authority to preclude the state from going ahead with a retrial. Well, can I ask you a question? If we were to remand, what would this hearing look like? Well, I assume both sides would be able to bring in evidence. Petitioner could bring in his minimus. And does that exist as far as you know? I know only what you know, Your Honor, that he says he got it in 2018. Does he say he still has it? I guess that's the question. Oh, well, that's another question. But I guess, you know, at a hearing, he could say the guards beat me up and took my minimus away. So that would be part of the hearing? I assume so. But again, I don't think that the minimus is his claim is good without the minimus. I think, you know, the minimus would be icing on the cake. But the fact is that nobody said back in the 1990s or whenever, we are not retrying you. There's no indication of that. I mean, we don't even know if he received anything from the Sentencing Commission. Put very simply, Mr. Volkow, what you're saying is that the burden, I suppose, is on the state to establish that this was outside the statute of limitations. And the record shows only that there was an open count. And if that's the state of the record, then if we're limited to that, you should prevail. Because there's no evidence that the open count was ever dismissed. Thank you. You summed up much better than I could have done, Your Honor. But can I ask a different question? So if this transcript exists and there's a statement on the transcript that a representative of the state says, okay, we're not moving forward on this, so we dismiss or intend to dismiss, would that resolve it? Or your view is that there needs to be the issuance of a formal document? I don't know what that transcript would look like. I don't know whether Petitioner would have received notice of that. I don't know how formal it is, how it would have applied under Connecticut law. But I think the bottom line is there is no such transcript in this record. And I'm not sure that it should go back for the state to produce such a transcript at this point. If they had such a transcript, they had the entire pendency of the district court case to come forward with it. Right. But they've also got a statement in a proposed amended complaint by your client that he was resentenced in December of 1998, which also would suggest is consistent with this purported transcript. I understand the argument, as I just stated it, that if it's not in the record, it doesn't exist and we should go ahead and decide this rather interesting question of what happens instead in the district court's interesting theory on why the habeas is still untimely. But the thing is that it goes back again. Right. For the we send it back and the court is then supposed to consider the habeas petition on its merits. And then Mr. Rawls or some successor counsel for the state comes in and says, but I've got this transcript. You see, you were wrong all along. And the answer is, well, too bad you didn't bring it up. And so we're going to decide this habeas petition on the merits. That seems a rather strange way to proceed. If the judge failed to clarify the record because the judge thought that it was worth going forward, then maybe even if we do decide the legal issue your way and say he was wrong. Doesn't that still leave us leave an open issue before you get to the merits below as to, well, that theory didn't work, but what really happened in in 1998? Well, I'm not sure of two things, your honor. First, I'm not sure that if it's if it's remanded to the district court now to proceed with the habeas. I'm not sure if the transcript will provide a defense or if if petitioner will just have his opportunity to have a habeas, which isn't a giveaway. It just gives him a chance to have a day in court. And at a minimum, he didn't miss by that much. It's not like he's 20 years late. There's been there's been tolling for a lot of it. So he's if he missed, he missed by a much smaller amount of time. And and giving him a break on that is not a huge departure from from anything or or it's not really going to prejudice anybody very much. The the other thing, though, as far as his proposed amended complaint, we don't know what he meant by that. He he's not he may have been very unsophisticated and said something wrong. He may not have been trying to say I had a resentencing, but he may have just been trying to say what we already know. The resent the sentencing commission said, yeah, it weren't going to change anything. So I'm to remand over that. I think I think it makes it's probably less of a waste of judicial resources to just say, OK, go ahead. Have your habeas. There isn't a good enough record here to you know, the state's got to be more careful and deal with counts when they come back. All right. Well, why don't we end it there? Thank you both. Very well argued. We always have a decision on that.